```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE      *   MDL Docket No. 2004
                                   4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS  *
                                   Case No.
LIABILITY LITIGATION           *   4:12-cv-185 (J. HATFIELD)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Jeanne Hatfield was implanted with ObTape, and she asserted that she suffered injuries caused by ObTape. Mrs. Hatfield brought this product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Mrs. Hatfield also asserted that Mentor did not adequately warn her physicians about the risks associated with ObTape. After Mrs. Hatfield filed this action, she died of pancreatic cancer, and her husband Billy Hatfield was substituted as the party plaintiff in her place. Mentor contends that Mr. Hatfield's claims are barred by the applicable statute of limitations. For the reasons set forth below, the Court agrees, and Mentor's Motion for Summary Judgment (ECF No. 46 in 4:12-cv-185) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Mr. Hatfield, the record reveals the following. Mrs. Hatfield was a resident of Oklahoma, and all of her medical treatment relevant to this action occurred in Oklahoma. Mrs. Hatfield experienced symptoms of stress urinary incontinence, and she consulted Dr. J. David Wayman. Dr. Wayman recommended a sling implant and implanted Mrs. Hatfield with ObTape on August 25, 2004. Nearly a year later, Mrs. Hatfield returned to Dr. Wayman complaining of right groin pain. Upon examining Mrs. Hatfield, Dr. Wayman discovered that her ObTape had eroded through her vagina. Wayman Dep.

2

57:3-13, ECF No. 52-3. Dr. Wayman told Mrs. Hatfield that he could see a portion of the ObTape and that he was going to cut out the portion he could see. That is what he did. Nearly two weeks later, Mrs. Hatfield visited Dr. Wayman complaining of pain in her right leg and right buttock, along with night sweats. Dr. Wayman believed that Mrs. Hatfield had a right-side perineal abscess, and he was concerned that the abscess might be associated with the ObTape. *Id.* at 122:8-19.

Dr. Wayman obtained a CT scan and determined that surgery would be necessary to treat the suspected abscess. He told Mrs. Hatfield that she had an infection that needed to be treated. *Id.* at 135:14-15. Although Dr. Wayman assumed ObTape was the cause of the abscess, he does not recall telling Mrs. Hatfield of this assumption. *Id.* at 136:2-11. On July 27, 2005, Dr. Wayman performed surgery to treat the suspected abscess. During the surgery, Dr. Wayman removed the infected portion of Mrs. Hatfield's ObTape. After the surgery, Mrs. Hatfield was told that Dr. Wayman had removed part of the ObTape. Mrs. Hatfield does not recall being told that the ObTape was infected or that it caused her infection, and Dr. Wayman never told her that the ObTape caused her injuries. *Id.* at 79:3-8.

In 2007, Mrs. Hatfield reported to her primary care physician that she thought she might have an abscess on her left side. Mrs. Hatfield knew that she still had some ObTape on her

3

left side.  She did not want to have the same problems she experienced on her right side.  Hatfield Dep. 80:11-81:5, ECF No. 52-4.

Mrs. Hatfield filed her Complaint on July 19, 2012.  *See generally* Compl., ECF No. 1 in 4:12-cv-185.  Mrs. Hatfield brought claims for personal injury under a variety of theories, including strict liability design defect, strict liability manufacturing defect, strict liability failure to warn, and negligence.

## DISCUSSION

Mrs. Hatfield filed her action in this Court under the Court's direct filing order.  The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint."  Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004.  The parties agree that Oklahoma law, including its statutes of limitation, apply to Mr. Hatfield's claims because Mrs. Hatfield was an Oklahoma resident and all of her medical treatment relevant to this action occurred in Oklahoma.

Oklahoma has a two-year statute of limitations for product liability claims.  Okla. Stat. tit. 12, § 95(3); *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1361 (Okla. 1974).  Under Oklahoma's discovery rule, the statute of limitations for

product liability actions begins to run when "the plaintiff knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought and that defendant has caused it." *Williams v. Borden, Inc.*, 637 F.2d 731 (10th Cir. 1980) (applying Oklahoma law). "[A] reasonably prudent person is required to pursue his claim with diligence." *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947, 951 (Okla. 1984). "Statutes of limitation were not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by the facts." *Id.* "A plaintiff is chargeable with knowledge of facts which he ought to have discovered in the exercise of reasonable diligence." *Id.*

In *Daugherty*, the plaintiff was exposed to toxic pesticides, and his doctors tentatively diagnosed him with insecticide poisoning. He did not, however, pursue a claim against the insecticide manufacturer until nearly three years later. Oklahoma Supreme Court concluded that his claims were barred because the record showed that he had enough facts "to put a reasonable man upon inquiry" years before he filed his action. *Id.*

Mrs. Hatfield did not file her action until seven years after she learned in 2005 that her ObTape had eroded and that part of it had to be removed in connection with the treatment of her right-side abscess. While the doctor may not have

5

explicitly told Mrs. Hatfield that her injuries were caused by ObTape, he did believe that ObTape caused her injuries. Presumably, the doctor would have told Mrs. Hatfield of this suspicion had she asked for his opinion of the root cause of her problems. Moreover, the record suggests that Mrs. Hatfield herself suspected that ObTape was the cause of some of her injuries. In 2007, Mrs. Hatfield went to her doctor believing that she may have an abscess on her left side; she knew she had some ObTape on her left side and did not want repeat the experience she had with the serious abscess on her right side. At that point, Mrs. Hatfield had a duty under Oklahoma law to investigate the potential causal connection between ObTape and her injuries. Mr. Hatfield did not present any evidence that Mrs. Hatfield took steps to discover whether a defect in ObTape caused her problems, and he did not point to evidence suggesting that Mrs. Hatfield could not have made the connection before the statute of limitations expired had she exercised reasonable diligence. Because Mrs. Hatfield did not exercise reasonable care and diligence to discover her cause of action, Mr. Hatfield's claims are time-barred under Oklahoma law.

CONCLUSION

As discussed above, Mentor's Motion for Summary Judgment (ECF No. 46 in 4:12-cv-185) is granted.

IT IS SO ORDERED, this sixteenth day of September, 2015.

                                              s/Clay D. Land
                                              CLAY D. LAND
                                              CHIEF U.S. DISTRICT COURT JUDGE
                                              MIDDLE DISTRICT OF GEORGIA